UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JOYCE ALIECE SMITH** | **CASE NO. 6:18-CV-01192** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **CIRCLE K STORES, INC., ET AL.** | **MAG. JUDGE PATRICK J. HANNA** |

## RULING

Before the Court is a Motion for Summary Judgment as to liability filed by Defendant Circle K Stores, Inc. ("Circle K").[1] Pursuant to the motion, Circle K seeks dismissal of all claims brought by Plaintiff, arguing (1) "plaintiff cannot prove the door mat on which she allegedly tripped presented an unreasonable risk of harm or that an alleged 'ripple' in the mat caused her fall," (2) to the extent the mat created an unreasonable risk of harm, the risk was open and obvious to all, and (3) plaintiff cannot prove Circle K had notice of any alleged hazardous condition and/or failed to exercise reasonable care.[2] Plaintiff opposes the motion, arguing the mat presented an unreasonable risk of harm and that Circle K had notice of the alleged hazardous condition.[3] For the reasons that follow, Circle K's motion is GRANTED.

**I.**
**BACKGROUND**

The following facts are not in dispute:

1. "Plaintiff, Joyce Smith, visited the Circle K located at 300 Veterans Memorial Drive, Abbeville, Louisiana, on or about July 20, 2017, accompanied by her son, Jeremi Vilchis, grandson, Jaisen Campos, and their two friends Kabien Wright and Tyrone Glover.

---

[1] ECF No. 42. Travelers Insurance Company ("Travelers") is named as a second movant in each motion, however, the Court previously granted Plaintiff's motion to dismiss her claims against Travelers. ECF No. 11.
[2] *Id.* at 1.
[3] ECF No. 58 at 3-5.

2. Plaintiff, her son, grandson and friends entered the Circle K through the front entrance of the store, successfully traversing a doormat that was stationed there.

3. Jeremi, Jaisen, Kabien, and Tyrone exited the store through the front entrance without incident.

4. Plaintiff prepared to exit the store, walked toward the front entrance, traversed the door mat stationed at the front of the store and became distracted by a newspaper article that she began to read.

5. Plaintiff stood in the vicinity of the front entrance, near the door mat, while she read the newspaper article.

6. After she finished reading the article, she prepared to exit the store and fell.

7. Before plaintiff fell, she was carrying several items she had just purchased from the store and was not looking down.

8. Plaintiff was wearing slides when she fell, one of which came off when she fell.

9. Plaintiff filed the instant lawsuit and alleged that she sustained injuries as a result of her fall in Circle K.

10. Plaintiff frequented this Circle K store approximately four times a week prior to her accident and never had any incident or problem with the door mat.

11. Plaintiff had observed this doormat or one similar to it stationed at the front entrance of this Circle K on many occasions.

12. Plaintiff often falls without respect to any door mat, hazard or floor condition.

13. On the date of the accident, Plaintiff was aware that there was a doormat at the front entrance of the Circle K, but never paid attention to it or looked at it, prior to falling.

14. Plaintiff does not know the condition of the door mat as it existed prior to her fall.

15. Plaintiff did not see any ripples, hills or uneven portions of the door mat, prior to her fall.

16. Jaisen does not know the condition of the mat prior to plaintiff's fall. He did not see any ripples, hills or uneven portions of the door mat, prior to plaintiff's fall.

17. There are no ripples, uneven surfaces, or hills visible in the doormat in the video or photographs of the incident.

18. After plaintiff entered the store, but before she fell, seven other patrons enter and/or exit the store and traverse the doormat without incident.

19. No one accompanying plaintiff encountered any difficulty traversing the door mat.

20. Plaintiff traversed the mat without any trouble two times before falling.

21. Jeremi nor Jaisen know what caused plaintiff to fall because neither of them witnessed the exact moment when plaintiff began to trip."[4]

Smith alleges that she tripped on a raised portion of the mat that was located at the entrance to the store.[5] She testified that one side of the mat was rolled up, and that her foot got caught on the rolled portion.[6] Smith acknowledged that she did not pay attention to the mat, and did not notice any problems with its placement or with parts of it being raised or wrinkled before she fell.[7]

Maranda Alleman was the assistant manager at the store at the time Smith fell.[8] She testified that UniFirst Corporation ("UniFirst") delivered mats and other supplies to the store on a weekly or bi-weekly basis.[9] As part of the daily cleaning process, floor mats were placed outside the store to be swept and while the floors were mopped, after which the mats were replaced inside.[10] Records referred to during Alleman's testimony allegedly reflect that the mat which was in the entryway of the store when Smith fell was delivered on July 18, 2017.[11] Alleman testified that she routinely inspected the floor of the store, including mats that were located in it, and

---

[4] ECF No. 42-3; ECF No. 58-1; *see also* LR 56.2.
[5] ECF No. 1-4 at 2.
[6] ECF No. 42-5 at 28-29.
[7] ECF No. 42-5 at 25.
[8] ECF No. 42-10 at 9-10.
[9] ECF No. 42-10 at 12.
[10] ECF No. 42-10 at 13-15.
[11] ECF No. 42-10 at 23.

addressed problems with the mats as they arose, such as wrinkles, curls, or misplacements.[12] Alleman testified that prior to the fall, she did not think the mat presented a hazard.[13] She moved the mat after Smith fell just to be safe, in case it might have contributed to the injury, and so that other customers would not think the incident was being ignored, rather than because she observed a hazardous condition in the mat.[14] She testified that when she inspected the mat after Smith's fall, she did not find anything wrong with it.[15]

Smith alleges that immediately after her fall, a Circle K employee removed the mat from the store entryway and stated that "I should have picked that up earlier but I was too busy."[16] The cashier also stated or suggested that Smith was not the first person to trip on the rug that day.[17] Smith did not witness the cashier's actions or statements, but testified that her son and grandson later told her that it had been said.[18] When she returned to the store a few days after the incident, the same employee asked how she was faring and told her that he was supposed to pick the mat up, presumably meaning before she fell.[19] Plaintiff has not identified this employee.

Smith's son, Vilchis, testified that he could not see whether Smith tripped on anything, but that he saw that the mat was wrinkled on the edge and corner after Smith fell.[20] He testified that when he walked in, he noticed that the edges or corners were raised or wrinkled[21], and opined that

---

[12] ECF No. 42-10 at 29.
[13] ECF No. 42-10 at 29-31.
[14] ECF No. 42-10 at 30.
[15] ECF No. 42-10 at 34.
[16] ECF No. 1-4 at 2.
[17] ECF No. 42-5 at 26-27.
[18] ECF No. 42-5 at 27.
[19] ECF No. 42-5 at 27-28.
[20] ECF No. 42-7 at 16-18.
[21] ECF No. 42-7 at 25.

it could have been easily straightened or flattened.[22] Vilchis testified that after the fall, a Circle K employee took the mat away, and later stated that the mad should have been moved previously.[23]

Smith's grandson, Campos, testified that he did not see Smith fall, although afterward the mat was rippled as if it had been pushed together.[24] He did not notice the condition of the mat before Smith fell.[25] At deposition, Campos did not recall hearing a Circle K employee say anything to the effect that the mat should have been moved before Smith fell.[26]

Smith filed a Petition for Damages in the 15th Judicial District Court for the Parish of Vermilion on July 16, 2018, asserting a claim of negligence against Circle K and joint and solidary liability by Travelers as insurer of Circle K.[27] Smith filed a First Supplemental and Amending Petition for Damages, naming UniFirst as a defendant who provided the mat under contract with Circle K.[28] Smith makes identical claims of negligence against Circle K and UniFirst.[29] Circle K has filed the instant Motion for Summary Judgment of all Smith's claims against it. Circle K has filed an additional Motion for Summary Judgment as to medical causation.[30] UniFirst has also filed a Motion for Summary Judgment[31] seeking dismissal of Smith's claims against it, and a Motion for Relief for Spoliation of Evidence seeking an adverse inference against Circle K.[32]

---

[22] ECF No. 42-7 at 22-23.
[23] ECF No. 42-7 at 19-20.
[24] ECF No. 42-8 at 14.
[25] ECF No. 42-8 at 18.
[26] ECF No. 42-8 at 16.
[27] ECF No. 1-4.
[28] ECF No. 25 at 1-2.
[29] ECF No. 25 at 2-3.
[30] ECF No. 44.
[31] ECF No. 46.
[32] ECF No. 47. ACE American Insurance Company ("ACE") joins each of UniFirst's motions, but is not named as a party in any pleadings. The first reference to ACE comes in UniFirst's Rule 26(f) Report, in which UniFirst alleges that ACE provided an insurance policy that is presumably relevant to this matter.

## II.
### STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[33] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[35] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[36]

When reviewing a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[37]

## III.
### APPLICABLE LAW

Smith's claims are brought pursuant to the Louisiana Merchant Liability Act. La. R.S. 9:2800.6. The statute provides in relevant part:

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the

---

[33] Fed. R. Civ. P. 56(a).
[34] *Id.*
[35] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[36] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[37] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 373 (5th Cir. 2001).

>claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
>(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
>(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
>(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
>
>C. Definitions:
>
>(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.[38]

Whether a condition presents an unreasonable risk of harm is "a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts."[39] The inquiry turns on a risk-utility balancing test, which considers four factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature."[40] However, a defendant "generally does not have a duty to protect against an open and obvious hazard," and a dangerous condition that is open and obvious to all "may not be unreasonably dangerous."[41] A

---

[38] La. Rev. Stat. Ann. § 9:2800.6. The requirements that a plaintiff prove (1) that the condition presented an unreasonable risk of harm, (2) actual or constructive knowledge on the part of the custodian, and (3) failure to exercise reasonable care, are also elements of a claim brought under Civil Code article 2317.1.
[39] *Broussard v. State ex rel. Off. of State Bldgs.*, 2012-1238 (La. 4/5/13), 113 So. 3d 175, 183 (quotations and citations omitted).
[40] *Id.* at 184.
[41] *Id.* (citations omitted).

hazard is open and obvious if it is "open and obvious to all, i.e., everyone who may potentially encounter it."[42] Whether a condition is not an unreasonable risk of harm by virtue of being open and obvious is a proper question for summary judgment.[43]

## IV.
### ANALYSIS

Circle K contends that Plaintiff cannot prove an alleged deficiency in the mat caused her fall.[44] According to Defendant, the store surveillance video and photographs taken from that video show that "the mat does not move or shift at any point, except when Plaintiff falls," and show that the mat was not "rippled or compromised at any point prior to plaintiff's contact."[45] Maranda Alleman, Circle K's assistant manager at the time of the fall, testified that the mat was not a trip hazard and appeared to be in good condition prior and subsequent to Plaintiff's fall.[46] Circle K points to Plaintiff's deposition testimony that she did not see the mat at any point before her fall.[47] Circle K also argues that while Plaintiff's son, Vilchis, testified that the rug was wrinkled or curled, he did not see Smith's fall so has no knowledge about what caused it.[48] Circle K therefore argues that Smith cannot prove that the mat presented an unreasonable risk of harm to Plaintiff.[49] Circle K alternatively argues that any hazard presented by the mat was open and obvious to all, and therefore it owed Smith no duty to protect her from the mat's condition.[50] Circle K further argues

---

[42] *Id.* (citations omitted).
[43] *See, e.g., Bufkin v. Felipe's Louisiana, LLC*, 2014-0288 (La. 10/15/14), 171 So.3d 851; *Rodriguez v. Dolgencorp, LLC*, 2014-1725 (La. 11/14/14), 152 So.3d 871; *Allen v. Lockwood*, 2014-1724 (La. 02/13/15), 156 So.3d 650.
[44] ECF No. 42-2 at 9
[45] *Id.*
[46] *Id.* at 10
[47] ECF No. 42-2 at 12-13.
[48] ECF No. 42-2 at 13-14.
[49] ECF No. 42-2 at 15-16.
[50] ECF No. 42-2 at 15-16.

that Smith cannot prove that it had any actual or constructive knowledge of an alleged hazard in the mat, or that it failed to exercise reasonable care.[51]

Plaintiff opposes the motion, arguing that a genuine issue of material fact exists as to whether the mat was an open and obvious hazard because "Plaintiff testified that the cashier informed her that she was the second person to encounter problems with the mat."[52] On this issue, Plaintiff testified as follows:

> Q    Are you aware of anyone else who had any problems with the mat besides you?
>
> A    According to the cashier, yes, ma'am.
>
> Q    Well, tell me about that. What did the cashier say?
>
> A    I was the second one, and he was supposed to have been picked it up and he didn't because of where it was messed up at.
>
> Q    When did this conversation happen?
>
> A    When I was laying on the ground, he told that to my son and grandson, Tyrone, and Kabien.
>
> Q    When you said – did you hear that comment?
>
> A    I was out for a good moment.
>
> Q    And that's my question. Is that something you heard from the cashier or something that you heard from your grandson?
>
> A    From my son and grandson.
>
> . . . .
>
> Q    But tell me what they told you.
>
> A    When I went back about two, three days later, the little fellow asked me how was I doing, and he told me he was supposed to pick it up. It was a little mixed Puerto Rican white fellow.[53]

---

[51] ECF No. 42-2 at 18.
[52] ECF No. 58 at 3.
[53] ECF No. 42-5 at 26-27.

Smith further argues that Alleman's testimony shows that Circle K had knowledge that the store's mats rippled, because she testified that they sometimes did ripple when they got wet.[54]

Circle K offers video from security cameras throughout the relevant store, especially video showing the entryway, as evidence, as well as still shots taken from that video. The Fifth Circuit has indicated that courts should give greater weight at the summary judgment phase to facts "evident from video recordings taken at the scene."[55] Where a video recording discredits the plaintiff's version of events, courts should consider "the facts in the light depicted by the videotape."[56] Applying this principle, courts in the Fifth Circuit have relied on video recordings to grant summary judgment in slip and fall cases.[57] Here, however, the video footage in the summary judgment record does not foreclose Plaintiff's version of events. Much of the mat is visible in the footage, including the portion Smith alleges was rolled or wrinkled, but not the entirety of it. During her deposition, Smith circled the part of the mat that she alleges was wrinkled or curled up.[58] A still image taken during of Smith's fall shows the edge of the mat lifted by the toe of her left shoe, suggesting that her foot or shoe did catch on the rug.[59] However, the resolution and angle of the footage are insufficient to show definitively whether or not any edges of the mat were rolled or wrinkled.[60] The video, therefore, is not conclusive of either party's theory.

---

[54] ECF No. 58 at 4-6.
[55] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).
[56] *Id.* (quoting *Scott v. Harris*, 550 U.S. 372 (2007)).
[57] *See e.g., Cone v. DG Louisiana, LLC*, No. 18-CV-1247, 2019 WL 1111463, at *3-4 (E.D.La. March 11, 2019); *Courington v. Wal-Mart Louisiana, LLC*, No. 2:17-CV-00771, 2018 WL 707521, *3-4 (W.D.La. Feb. 2, 2018).
[58] ECF No. 42-5 at 37-39; 93.
[59] ECF No. 42-5 at 95.
[60] ECF No. 42-5 at 90-93.

Taking the pleadings together, Plaintiff's evidence that the mat was wrinkled or curled and thereby caused her fall consists of: her own testimony that the mat was curled or wrinkled and caused her fall; Smith's son's testimony that the mat was wrinkled or curled; and the testimony of Smith and her son that an unidentified Circle K employee[61] said the mat should have been removed before Smith's fall and that another customer had had a problem with the mat earlier that day.[62] As argued by Circle K and not addressed by Smith, statements by unidentified employee are inadmissible hearsay and not admissible summary evidence.[63] Therefore, the question on summary judgment is whether the testimony of Smith and her son carry her burden of showing a genuine dispute as to whether (1) the mat presented an unreasonable risk of harm, (2) Circle K had actual or constructive knowledge of the condition prior to its occurrence, and (3) Circle K failed to exercise reasonable care.

In general, whether a condition presents an unreasonable risk of harm is a mixed question of fact and law.[64] However, "a condition does not present an unreasonable risk of harm when it is an open and obvious risk. The open-and-obvious inquiry is objective, looking to whether the condition is obvious to all who may encounter it and not to whether the plaintiff had actual knowledge of the condition."[65] "The ability to view the condition is not dispositive of the 'open

---

[61] In the parties' joint proposed Pretrial Order [ECF No. 68], Smith names a list of Circle K employees she intends to call. The summary judgment record, however, does not identify the person who allegedly commented that the mat should have been moved.

[62] At deposition, Campos testified that the rug was wrinkled, but that he did not see Smith fall or see her foot get caught on the mat, nor did he inspect the mat after she fell. [ECF No. 42-8 at 14] He also testified that he did not recall hearing any Circle K employee say that the mat was hazardous before Smith's fall. [ECF No. 42-8 at 16]

[63] *See Allen v. State Farm Fire & Cas. Co.*, No. CV 17-406, 2019 WL 2066111, at *2 (W.D. La. Apr. 1, 2019); *Roach v. Walmart, Inc.*, No. CV 19-13114, 2020 WL 4698982, at *4 (E.D. La. Aug. 13, 2020).

[64] *Broussard*, 113 So. 3d at 183.

[65] *Thibodeaux v. Home Depot USA, Inc.*, 816 F. App'x 988, 990 (5th Cir. 2020) (citing *Broussard*, 113 So. 3d at 184).

and obvious to all' inquiry; rather, it is a question of the expectation of those encountering the condition."[66]

Reviewing the summary judgment evidence, the Court concludes that the condition of the mat–whether or not it presented an unreasonable risk of harm–was open and obvious to all. Vilchis testified that when he entered the store he noticed that a corner of the mat was raised or wrinkled, but Smith did not notice the condition of the mat before her fall. The mat was in the entryway of the store, and was traversed multiple times by Smith herself, those in her party, and by other customers before them, all without incident aside from her fall. Any wrinkling or curling of the mat's edges was not so severe so as to be clearly visible on the surveillance video. Smith does not allege, nor does the video reveal, that the view of the mat was obstructed. Alleman testified that both before and after the incident, she did not observe any hazardous condition. Thus, the condition of the mat was obvious to all who might have encountered it, regardless of Smith's actual knowledge. Whatever the condition of the mat, that condition was open and obvious to all, and therefore Smith cannot show that a genuine issue exists as to whether the mat's condition presented an unreasonable risk of harm. Circle's K's motion is GRANTED. Smith's claims against it are dismissed.

As noted above, Smith asserts identical claims and theories of liability against Circle K and UniFirst.[67] In light of the Court's conclusion that the condition of the mat was open and obvious, neither Circle K nor UniFirst owed Smith a duty arising from that condition. UniFirst's Motion for Summary Judgment[68] is therefore GRANTED on the same grounds as Circle K's motion.

---

[66] *Id.* (citing *Tramuta v. Lakeside Plaza, L.L.C.*, 14-410 (La. App. 5 Cir. 2/25/15), 168 So. 3d 775, 783).
[67] ECF No. 25.
[68] ECF No. 46.

Circle K's Motion for Summary Judgment[69] as to medical causation and UniFirst's Motion for Relief for Spoliation of Evidence[70] are DENIED as MOOT.

## V.
### CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Circle K's Motion for Summary Judgment[71] as to liability and UniFirst's Motion for Summary Judgment[72] are GRANTED. Smith's claims against Circle K and UniFirst are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Circle K's Motion for Summary Judgment[73] as to medical causation and UniFirst's Motion for Relief for Spoliation of Evidence[74] are DENIED as MOOT.

THUS DONE in Chambers on this 18th day of October, 2021.

**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**

---

[69] ECF No. 44.
[70] ECF No. 47.
[71] ECF No. 42.
[72] ECF No. 46.
[73] ECF No. 44.
[74] ECF No. 47.